**In Re Anonymous No. 13 D.B. 82**

Disciplinary Docket no. 13 D.B. 82.

McDONNELL, *Member,* February 10, 1983—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (Enforcement Rules),

the Disciplinary Board of the Supreme Court of Pennsylvania (board), submits its findings and recommendation to your honorable court with respect to the above proceeding.

## I.HISTORY OF PROCEEDINGS

On March 3, 1982, a petition for discipline was filed against respondent by the Office of Disciplinary Counsel charging the respondent with violating the following Disciplinary Rules of the Code of Professional Responsibility:

1. D.R. 1-102(A)(4)—prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation;

2. D.R. 1-102(A)(6)—prohibiting conduct adversely reflecting on an attorney's fitness to practice law;

3. D.R. 6-101(A)(3)—prohibiting neglect of a legal matter;

4. D.R. 6-102(A)—prohibiting attempt to limit liability to a client for personal malpractice;

5. D.R. 7-101(A)(1)—prohibiting an attorney from intentionally seeking the lawful objectives of his client;

6. D.R. 7-101(A)(2)—prohibiting an attorney from intentionally failing to carry out a contract of employment; and

7. D.R. 7-101(A)(3)—prohibiting an attorney from intentionally damaging or prejudicing his client.

A hearing was held on September 15, 1982 before hearing committee [   ]. When the hearing committee filed its report on November 16, 1982, it found that respondent had violated Disciplinary Rules D.R. 1-102(A)(4) and D.R. 6-101(A)(3) and recommended a public censure. No exceptions were filed to the recommendation of the hearing committee.

## II. FINDINGS OF FACT

The pertinent findings of fact found by the hearing committee and adopted by the Disciplinary Board are as follows:

1. Respondent, [   ], Esq., was born in 1939 and was admitted to practice law in the Commonwealth of Pennsylvania on or about November 20, 1967. His Attorney Registration Number is [   ] and his office is located at [   ].

2. On or about January 11, 1975, [A] was involved in an automobile accident at the intersection of James Street and Diamond Avenue in the City of [   ], Pa., when the car he was driving was struck by a [B] Rental truck being driven by [C].

3. As a result of the accident, [A] suffered minor personal injuries, which caused him to lose one week of work and his car, a 1971 Ford L.T.D., was damaged.

(a) [A's] medical bills included: $14 for the hospital; $10 for Dr. [D]; and $60 for x-rays.

(b) [A's] lost wages were approximately $300; and

(c) The damage to [A's] car cost him $1,266.67 to have repaired [A] was reimbursed $1,088.67 by his insurance carrier, the [E] Insurance Group).

4. On or shortly after the date of the accident, [A] retained respondent to initiate suit on his behalf against the appropriate parties.

5. By letter dated January 14, 1975, the respondent notified the [F] Insurance Company, the insurer for the [B] System, that he was representing [A].

6. On January 28, 1975, respondent spoke with [G], a claim representative of [F], and provided him with damage estimates relative to [A's] car.

7. From March of 1975, [G] repeatedly wrote and called the respondent requesting information and

documentation as to [A's] medical and special damages. However, respondent did not provide this information to [F] until almost a year later when he personally met with [G] on March 8, 1976.

8. During respondent's March 8, 1976 meeting with [G], [G] made an offer of settlement in the total amount of $784, comprised of: $84 costs; $250 lost wages for one week; $250 for "inconvenience"; and $200 for an attorney's fee.

9. By letter dated April 5, 1976, [G] sent the respondent a check for $784, payable jointly to the respondent and [A], and a release which [G] requested respondent have [A] sign and then return to [F].

10. Respondent had conversation with [G], of [F], which did not result in any settlement and, subsequent to June 7, 1976, respondent had no further contact with [G] or anyone else from [F] or otherwise concerning [A's] claims.

11. Despite numerous contacts from [A], respondent failed to initiate any suit on his behalf against any party and all causes of action which he may have had become barred by the applicable statute of limitations.

12. Respondent never advised [A] that he had never initiated suit in a timely manner, or that he may be personally responsible to [A] for professional malpractice.

13. From March of 1975 to April of 1976, [G] repeatedly wrote and called the respondent requesting information and documentation as to [A's] medical and special damages in an effort to try to reach a settlement of the case on behalf of his insured. PX-1.

14. Respondent failed to respond to letters and calls from [G] in a timely manner. PX-1.

15. Having heard nothing further from respondent subsequent to June of 1976, [F] issued a stop-

payment on their settlement check, and closed their filed on or about March 11, 1977, approximately two months after the applicable statute of limitations for personal injury action had expired. PX-1.

16. [A] had informal contact with respondent on a frequent basis, approaching approximately once every month or two, during which he would inquire into the status of his case.

17. Respondent admitted that [A] "contacted him numerous times over the years from the beginning of 1975 through September of 1980," reaching a total contact during the years of 1979 and 1980 alone, of as many as 40 times.

18. On the many occasions when [A] did talk to respondent, respondent repeatedly assured him that everything with respect to his case was being taken care of.

19. Respondent's file (RX-2), reflects absolutely no activity on [A's] case from April of 1976 to July 11, 1980, at which time respondent sent [A] a letter again requesting information concerning damages.

20. During the last contact which respondent had with [A] in September of 1980, respondent indicated to [A] that he would be receiving compensation for his damages suffered in the accident, "without question."

21. Without respondent telling him about the actual facts of the situation, [A] eventually, on his own, sought legal counsel, and, after the matter was reported to the disciplinary authorities, he received a $3,000 payment from respondent in settlement of his claim for malpractice.

22. Respondent practiced in a "one-man law office," and had a large number of cases during the period of 1975 to 1981, along with numerous community and civic responsibilities and activities.

## III. DISCUSSION

After reviewing all of the evidence, the hearing committee found that respondent had violated D.R. 1-102(A)(4) prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation and D.R. 6-101(A)(3) prohibiting neglect of a legal matter. The other violations charged, the committee concluded, were not supported by sufficient evidence. With this conclusion, the board agrees.

The respondent in this case did not dispute the fact that he neglected a legal matter and did not tell his client that the statute of limitations had expired. In fact, he continued to misrepresent to his client that he was proceeding with the case when, in fact, he knew that the statute of limitation had expired. Respondent testified as to how busy he was during the period of time involved, but this is no excuse for his neglect and misrepresentation.

An attorney who undertakes a client's matter owes an obligation to that client to properly represent him. There is no question here that respondent neglected his client's case and did so over a period of about a year and one-half. During that time, respondent never told his client that a settlement offer had been made and, in fact, refused to answer his client's telephone calls and letters. It was not until the client hired another lawyer that the client realized that the statute of limitations had passed.

The evidence clearly established that respondent has seriously neglected a legal matter and has misrepresented the facts to his client and, therefore, has violated the pertinent Disciplinary Rules.

As for the discipline to be imposed, the committee's report notes that respondent has received two previous informal admonitions involving cases

where he has also neglected clients' matters. The committee took into account the many character witnesses who testified on behalf of respondent and noted that respondent enjoys a good reputation in the community. However, taking into consideration the two prior informal admonitions and the serious neglect and misrepresentation present in this case, the sanction that the Committee recommends is a public censure. The case of In Re Anonymous No. 30 D.B. 77, 7 D. & C. 3d 394 (1978), is similar to the present case. In that case, which involved neglect and misrepresentation, this court agreed with the recommendation of the board and a public censure was imposed.

## IV. RECOMMENDATION

The board recommends to this honorable court that respondent, [ ] be publicly censured by the Supreme Court of Pennsylvania. The board further recommends that respondent pay the costs incurred herein.

Mr. Schiavo abstained.

Mrs. Hammerman, Mrs. Neuman and Messrs. Krawitz and Elliott did not participate in the adjudication.

## ORDER

ROBERTS, *C.J.*, March 11, 1983, the recommendation of the Disciplinary Board dated February 10, 1983, is accepted, and it is hereby ordered that [Respondent] be subjected to public censure by the Supreme Court at the session of court commencing April 18, 1983, in Philadelphia. It is further ordered

that respondent shall pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen dissents and would suspend for one month.